Curia, per
Frost, J.
At common law, a defendant arrested under a capias ad satisfaciendum, was committed to the body of the jail until he made satisfaction of the debt. But this rigorous confinement is, in England, mitigated by *77 allowing an enlargement from actual confinement, to the prison rules or limits. The rules are regarded as a mere expansion of the jail, and considered, to all intents and purposes, as the walls of the prison. Bonaforn vs. Walker, 2 T. R. 130. For his protection, the sheriff may take security from the prisoner that he will not go beyond the rules, but it is exclusively an indemnity to the sheriff. Before the Stat. 8 & 9 W. 3, c. 27, 2 Stat. 553, if the defendant escaped, the plaintiff had no other process against the person or property of the defendant, nor any recourse for the satisfaction of his debt, except an action against the sheriff for an escape. To redress this hardship, that statute, made of force in this State,' provides that, “ if a prisoner shall escape, the creditor, or creditors, at whose suit the prisoner was charged in execution at the time of his escape, shall or may re-take such prisoner by any new ca sa, or sue forth any other kind of execution, on the judgment, as if the body of such prisoner had never been taken in execution.” The Act of 1788, (5 Stat. 78,) allowing prisoners in execution the benefit of the prison rules, requires that he shall give satisfactory security to the sheriff of the district in which he may be confined, not to go or be without the prison rules. It further provides, that “upon an escape, the plaintiff may either proceed to re-take him, or against his security; or, in case the security shall prove deficient,' against the sheriff, who shall ultimately be answerable in damages for such escape.” * Thus, that which is merely an indemnity to the sheriff, under the Act of Wm, 3, is, under the Act of 1788, an indemnity to .the plaintiff. Under the Act of Wm. 3, the plaintiff, in case of an escape,, had no remedy against the defendant, except by issuing another ca sa, or a fi fa. By the Act of 1788, the plaintiff has, in addition, the bond of the defendant. Is this bond a substitute for the person of the defendant in execution, *78 and an indemnity to the plaintiff in case of an escape 1 If it is, then the accepting of it is equivalent to the benefit of a ca-sa, and a substitute for it; so that, as the plaintiff, under the Act of Wm. 3, can have only one of the two, a fi fa or a ca sa, having taken what the law has substituted for a ca sa he cannot claim the fi fa also. If this be the correct construction of the Act, Sullivan, having taken an assignment of Davenport’s bond, and recovered judgment thereon, must be confined to that security, and cannot claim the funds in the sheriff’s hands under the lien of his fi fa. The terms of the Act of 1788 are that, on an escape, the plaintiff may either proceed against the defendant to re-take him, or against his security, (fee. The benefit of both is clearly excluded. They have each the same object. It cannot be contended that under the statute of Wm. 3,' the plaintiff may have the jifa and ca saboth ; neither under the Act of 1788, can the plaintiff’ claim both the ca sa and the bond. If he sues on the bond, it is instead of the recaption of the ca sa ; that is, a substitute for the ca sa. By the Act of Wm. 3d he may have a ca sa or a Jifa. If he elects the first, the second is relinquished. By the Act.of 1788 he may have a ca sa or resort to the bond, but the bond being a substitute for the ca sa, under the statute of Wm. 3d,, he cannot have the fi fa. There can be no escape, without a ca sa. Where, therefore, the plaintiff takes- and sues the bond, he affirms his election to adhere to the-ca sa and enforce it. The bond is given instead of the defendant’s person. The plaintiff cannot take and sue it, and-claim the same process against the defendant’s property, as' if he had not arrested him. This would be very manifest, if, before he takes an assignment, he should withdraw the-óa sa, or discharge the defendant from imprisonment; for there, the bond is discharged. Walton vs. Oswald, 4 McC. 501. The bond is discharged if, after an escape, the plaintiff re-takes and imprisons the defendant. Osborne vs. Bowman, 2 Bay, 208. These cases show conclusively that the bond is instead of the person of the defendant. If the-plaintiff releases the person of the defendant, the bond is re-* leased ; and if, after the bond is forfeited by the escape of the prisoner, the plaintiff re-takes him, the bond is also released. An arrest is the highest satisfaction. After it, no *79 other process can issue on the judgment. If the bond, then, stands in the place of the arrest, the plain tiff can have no other lien or satisfaction out of the funds in the sheriff’s hands; for, under the statute of Wm. 3d, plaintiff cannot arrest the'defendant and have a jifa also. The ample security provided for the plaintiff, on an escape, supports the argument in this case. He may re-take the defendant, or may sue him and his surety on the prison bounds bond, and if the bond fail of satisfying his demands, he may sue the sheriff and his sureties. The policy of the law also comes in aid. The effect of giving a lien to Sullivan’s^/a, and applying the money in the'sheriff’s hands in payment of it, will exhonorate the sheriff from liability for the escape, and afford impunity to negligence or malfeasance in office; and this conclusion is confirmed by considering that the rules are merely an extension of the prison, allowed to the defendant at the risk of the sheriff, for whose exclusive indemnity, under the English practice, the bond is taken, which practice formerly received the adjudicated sanction of our Courts. * It is in the very nature of an indemnity, that if accepted it shall be taken in lieu and stead of the principal thing. Sullivan, by taking an assignment of the bond, and prosecuting it to judgment against the defendant and his surety, must be considered as still enforcing his renedy by the ca sa, and by that election waiving the fifa-.
It is ordered that the rule be made absolute, and the funds levied be applied to the execution of Berry in preference to Sullivan’s senior execution.
Motion granted.
O’Neall, Butler and Waedlaw, JJ. concurred.
Richardson", J. dissented.